IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MELISSA C. FIORI-LACIVITA, | Civil No. 16-4445 (RBK/JS) |
| Plaintiff, | |
| v. | **OPINION** |
| YLBE FRANCO-PALACIOS, M.D., *et al.* | |
| Defendants. | |

**THIS MATTER** comes before the Court on Defendant United States' (the "Government") Motion to Dismiss for Lack of Subject Matter Jurisdiction or Alternatively, for Summary Judgment (the "Government's Motion") [Doc. No. 55] on the basis that the Government is immune from suit under the Federal Tort Claims Act ("FTCA") or entitled to a cap on damages pursuant to the New Jersey Charitable Immunities Act ("NJCIA"), N.J.S.A. 2A:53A–7, *et seq*. For the reasons discussed below, the Government's Motion to Dismiss will be **DENIED** and the Motion for Partial Summary Judgment will be **GRANTED**.

## I. BACKGROUND

This is a medical malpractice lawsuit that arises from the emergency caesarean section surgery performed on Plaintiff Melissa Fiori-Lacivita and her post-surgical care at Inspira Medical Center ("Inspira") in Vineland, New Jersey. Defendants Dr. Ylbe Franco-Palacios, an employee of CompleteCare Health Network ("CompleteCare"), and Dr. Jessica Balkema, a fourth-year resident at Inspira, performed the surgery on January 31, 2014. Five days after the

surgery, Plaintiff discovered she had a perforation in her colon and required additional surgery. Plaintiff alleges that these physicians, employees of CompleteCare, a federally qualified health center ("FQHC"), deviated from the standard of care.

The United States, answering for Defendants, now argues that the Court has no jurisdiction to hear this suit because CompleteCare qualifies as a "charitable organization" under New Jersey Charitable Immunity Act ("NJCIA"), N.J.S.A. 2A:53A–7(a), and is therefore absolutely or partially immune from liability. Alternatively, the Government seeks partial summary judgment and asks the Court to find that CompleteCare is a qualified entity and entitled to a damages cap pursuant to N.J.S.A. 2A:53A–8.

If the absolute immunity provision applies, this Court lacks subject matter jurisdiction by operation of the United States' limited waiver of sovereign immunity in the FTCA. *See* 28 U.S.C. § 2674. If the damages cap applies, the United States is entitled to summary judgment limiting its liability to $250,000. Finally, if the NJCIA does not apply at all, as Plaintiff contends, then the United States' Motion should be denied in its entirety.

## II. LEGAL STANDARD

The Court will apply the standard under Federal Rule 12(b)(1) for the issue of absolute immunity under Section 7, and the standard under Federal Rule 56 for the issue of the damages cap under Section 8 of the NJCIA.

### 1. RULE 12(B)(1) STANDARD

An attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading

deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (internal quotations and alterations omitted). In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.* (citing *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

The Government has presented this Court with a factual attack, as the Government contends that the facts of the case preclude this Court from exercising subject matter jurisdiction. In a factual attack on subject matter jurisdiction, plaintiff's allegations enjoy no presumption of truthfulness. *CNA*, 535 F.3d at 139; *Mortensen*, 549 F.2d at 891. The burden of persuasion is placed on plaintiffs to establish jurisdiction, and the Court may make factual findings beyond the pleadings that are decisive to determining jurisdiction. *CNA*, 535 F.3d at 145; *Atkinson*, 473 F.3d at 514. However, the Court is also mindful of the fact that as this particular jurisdictional issue that is "intertwined with the merits," the Court will "demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *See CNA*, 535 F.3d at 144–45 (internal quotations omitted).

### 2. RULE 56 STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine

dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). When the Court weights the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322–23. A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252. Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996). Further, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." *Id.* (quoting *Ingersoll–Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 502 (3d Cir. 1990)) (internal quotations and alterations omitted).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

### III. IMMUNITY

Under the Federal Tort Claims Act, the United States is liable for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.

§ 2674. Essentially, the United States acts as an employer with *respondeat superior* liability for its employees under the FTCA. *See Lomando*, 667 F.3d at 374 (3d Cir. 2011). Thus, the United States "stands in the shoes" of CompleteCare, and can assert "any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defense to which the United States is entitled." *Id.* (citing 28 U.S.C. § 2674). The immunity at issue here stems from the New Jersey Charitable Immunity Act ("NJCIA"). *See* N.J.S.A. 2A:53A.

The NJCIA provides two different immunity provisions relevant to the Government's Motion. First, the NJCIA provides absolute immunity from suit for certain nonprofit organizations while also refusing to immunize individual paid healthcare providers. Section 7 of the NJCIA provides, in relevant part, as follows:

> No nonprofit corporation, society or association *organized exclusively for religious, charitable or educational purposes* or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association....
> 
> Nothing in this subsection shall be deemed to grant immunity to *any health care provider,* in the practice of his profession, *who is a compensated employee,* agent or servant of any nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes.

N.J.S.A. 2A:53A–7(a) (emphases added).  Second, the NJCIA provides for a cap on liability for certain nonprofits.  Section 8, in turn, provides as follows:

> *Notwithstanding the provisions of [N.J.S.A. 2A:53A–7]*, any nonprofit corporation, society or association *organized exclusively for hospital purposes* shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit....

N.J.S.A. 2A:53A–8 (emphases added).

Therefore, the plain language of N.J.S.A. 2A:53A–7 and –8 limits an entity's liability under the NJCIA where the entity: "[1] is formed as a nonprofit corporation ..., [2] is organized exclusively for hospital purposes, [3] was promoting those objectives and purposes at the time the plaintiff was injured, and [4] the plaintiff was a beneficiary of the activities of the hospital." *Kuchera v. Jersey Shore Family Health Ctr.,* 221 N.J. 239, 247, 249 (2015).  (internal citation omitted).

Because CompleteCare is a federally funded health center, the first element is not at issue here.  Instead, the instant motion focuses predominantly on whether CompleteCare is organized for an exclusively hospital or charitable purpose.

"The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damages." *Kuchera*, 221 N.J. at 247.  Put another way, if a nonprofit is organized "exclusively for hospital purposes," then no absolute immunity can apply.

Accordingly, if this Court determines that CompleteCare is organized exclusively for hospital purposes, then the jurisdictional inquiry is concluded, even without determining the charitable status of CompleteCare. *See Young v. United States*, 152 F. Supp. 3d 337, 347 (D.N.J. Dec. 2, 2015).

IV. **DISCUSSION**

The Government's Motion presents the Court with two different, but related, issues: (1) whether CompleteCare qualifies for absolute immunity under Section 7 of the NJCIA; and (2) whether CompleteCare qualifies for a cap on damages under Section 8 of the NJCIA. As such, the central question is whether CompleteCare was organized with an "exclusively hospital" or "exclusively charitable" purpose.

Plaintiff makes several arguments in challenging the Government's motions. First, Plaintiff argues the United States is not generally permitted to assert NJCIA defenses under Section 7 or Section 8. This argument suggests the Government waived defenses and now improperly offers two theories of immunity. Plaintiff also argues that the Government fails to meet its *prima facie* burden because Plaintiff never "benefited" from CompleteCare. Next, and far more persuasively, Plaintiff attacks the Government's argument that it is entitled to absolute immunity under Section 7. Finally, the Court notes that Plaintiff offers little to challenge the Government's arguments for a damages cap under Section 8. The Court considers these arguments in turn.

1. **The Government may assert a defense under the NJCIA.**

First, Plaintiff relies on *Lomando v. United States* to argue that the defense of charitable

immunity is not available to the Government. In doing so, Plaintiff suggests FTCA's limited waiver provision precludes the application of any immunities at issue here.

Plaintiff's first argument fails because it confuses the interplay between the FTCA and NJCIA. Specifically, 28 U.S.C. 2674 allows the United States to invoke any defenses, exceptions to liability, immunity provisions, and limitations on recovery that would be available to a private party under state law. *Id.* Congress also permits the United States to invoke these state law defenses brought under the FTCA to the extent they might be invoked by a private party. Finally, the United States, on numerous occasions, has invoked the NJCIA defenses before courts in this District. *See e.g.*, *Dupont v. United States*, 197 F. Supp. 3d 678, 683–86 (D.N.J. June 23, 2016) (Simandle, C.J.); *Gremminger v. United States*, No. 14-3626, WL 1170853, at *6 (D.N.J. Mar. 29, 2017) (Wolfson, D.J.). *See also Young v. United States*, 152 F. Supp. 3d 337, 347–48 (D.N.J. Dec. 2, 2015) (Kugler, D.J.).

Second, the Plaintiff argues that it is improper for the United States to argue in the alternative. The Court disagrees, however, and notes that it appears to be a common practice for the Government to submit alternative motions that ask for immunity under either Section 7 or Section 8. *See Id.*

Third, the Plaintiff argues that the Government may not assert any immunity defense because she was not a "beneficiary" of CompleteCare's services. Plaintiff focuses on the fact that she had no prior business dealings with CompleteCare, nor did Dr. Bispo, her private OB/GYN who treated her at Inspira. Plaintiff's Opposition Brief ("Pl. Br.") [Doc. No. 59] at 23–24.

Plaintiff misapplies the test for "beneficiary." A person is a beneficiary, for purposes of the NJCIA, if, on the day in question, he or she was a "direct recipient," "to whatever degree," of

the "good works" that the organization was advancing at the time. *Ryan v. Holy Trinity Evangelical Lutheran Church*, 175 N.J. 333, 350, 353 (2003); *see also* N.J.S.A. 2A:53A–7(b). The New Jersey Supreme Court has held that "the notion of who is a beneficiary . . . is to be interpreted broadly." *Green v. Monmouth University*, No. A-63-080612, 2019 WL 1996470, at *12 (N.J. May 7, 2019) (citing cases).

Plaintiff's third argument therefore fails because she is clearly a beneficiary for purposes of NJCIA immunity. Most obviously, on the day in question, she received services from CompleteCare consistent with healthcare it provides others in the community. She received emergency care from Dr. Ylbe Franco-Palacios, a CompleteCare employee. Though Dr. Bispo was the primary OB/GYN, the existing Hospital Affiliation Agreement between CompleteCare and Inspira Health Network establishes that CompleteCare physicians, like Dr. Franco-Palacios, may see unscheduled private patients.

Contrary to Plaintiff's assertion, the fact that Dr. Bispo did not directly work for CompleteCare is irrelevant to her having benefited from CompleteCare's services. *See Kostera v. Bacharach Inst. for Rehab*, No. A-1991-13T4, 2015 WL 4643642, at 5 (N.J. Super. Ct. App. Div. Aug. 6, 2015) ("a plaintiff was a beneficiary of an entity's good works even though his or her presence on the premises resulted from a relationship with another person or entity, and not the charity itself.") Similarly, whether Plaintiff intended to engage CompleteCare's services is irrelevant. *See DeVries v. Habitat for Humanity*, 290 N.J. Super, 479 (App. Div. 1996) ([P]laintiff's subjective motivations should not control determination of status as a beneficiary. . .").

The Government may therefore assert a defense of immunity under the NJCIA. The Court will now consider the Government's argument for absolute immunity under Section 7.

## 2. The Government is not entitled to absolute immunity

Pursuant to Section 7 of the NJCIA, the Government argues that it is completely immune from liability. N.J.S.A. 2A:53A–7. The issue is whether CompleteCare was organized "exclusively for charitable purposes."

The Government relies on CompleteCare's non-profit status, corporate documents, and charitable services in arguing for absolute immunity. Since 1987, CompleteCare had a public charity status as a 501(c)(3) nonprofit corporation. Defendant's Statements of Material Facts ("Def. SMOF") [Doc. No. 55-2] at ¶ 16. In addition, the Articles of Incorporation state, "The purpose for which this nonprofit Corporation is organized and operated is not for pecuniary profit but exclusively for charitable purposes." *Id.* at ¶ 23. Relatedly, its mission statement indicates that it wants to "improve lives by providing comprehensive high-quality healthcare to every person in every community that it serves" *Id.* at ¶ 18. CompleteCare also offers charitable services. These include a host of non-medical, health-related services to the community that "lessen the United States' burden because it does not have to provide those services directly." Defendant's Brief ("Def. Br.") [Doc. No. 55-1] at 27.

Plaintiff's argument for absolute immunity is unconvincing for several reasons. First, as Plaintiff rightly points out, the Government mistakenly suggests that CompleteCare's 501(c)(3) status is synonymous with having an exclusively charitable purpose under Section 7 of the NJCIA. *See Parker v. St. Stephen's Urban Dev. Corp.*, 579 (N.J. Super. Ct. App. Div. 1990) (explaining that an entity's non-profit and/or tax-exempt status is irrevelant to the determination of whether that entity is organized exclusively for a charitable purpose.)

Second, and more broadly, the Government is presenting a narrow view of

CompleteCare's financials. As the New Jersey Supreme Court explained, whether a nonprofit entity is organized for an exclusively charitable purpose often requires a broader fact-sensitive inquiry. *Bieker v. Cmty House of Moorestown*, 169 N.J. 167, 175 (2001). "Courts conducting this inquiry have looked to an organizations funding, charter, daily operations, relationships to other entities, and the extent to which an organization lessens a burden on the government." *Nazzaro v. United States*, 304 F. Supp. 2d 605, 611 (D.N.J. Jan. 28, 2004). Among these factors, "the organization's source of funds [i]s a critical element of charitable status." *Abdallah v. Occupational Ctr. Of Hudson City., Inc.*, 351 N.J. Super. 280, 798 (Ct. App. Div. 2002). One court explained, an "essential characteristic" of a non-profit corporation is the receipt of "a *substantial* amount of charitable contributions." *Morales by Martinez v. New Jersey Academy of Aquatic Sciences*, 694 A. 2d 600, 602–03 (App. Div. 1997) (emphasis added).

A closer inspection of CompleteCare's funding shows that its dominant motive is not charity, but some other form of enterprise. *See Dupont*, 197 F. Supp. 3d at 687 (discussing how to discern a charitable purpose). Most obviously, CompleteCare does not rely on charitable contributions. As the Plaintiff points out, just $9,550 of CompleteCare's $35 million in revenue comes from non-governmental private funding. Pl. Br. at 20. This amount, or just .02 percent of its total revenue, is far below charitable contribution percentages that New Jersey courts have found to be "substantial." *See Pelaez v. Rugby Labratories, Inc.*, 264 N.J. Super 450, 457 (Law Div. 1993) (deeming charitable status upon a defendant non-profit that received donations comprising 33.1% percent of its total revenue).; *Morales*, 694 A.2d at 602 n.1 (conferring charitable status upon a defendant non-profit that received donations comprising 40% of its total revenue).

Relatedly, CompleteCare's dearth of private donations undercuts the New Jersey

legislature's purpose in granting absolute immunity to *charitable* organizations. As Judge Wolfson explained in *Gremminger*, charitable immunity was designed to

> [P]rotect against the diversion of charitable funds from the purpose for which they were donated, to encourage private philanthropic activity to ensure the continued provision of services that benefit the general welfare, and to relieve the government of the burden of providing those services.

*See Gremminger v. United States*, No. 14-3626, 2017 WL 1170853, at *4 (D.N.J. Mar. 29, 2017) (citing cases). Again, given that a vast majority of CompleteCare's funding comes from patient billing and government funding, there is little, if any, concern that CompleteCare will divert charitable funds at the behest of wary benefactors.

The Court therefore finds the Government's argument for absolute immunity to be unconvincing. Accordingly, the Court will deny the Motion to Dismiss.

### 3. The NJCIA damages cap applies

Pursuant to Section 8 of the NJCIA, the Government next argues that the statutory cap applies. N.J.S.A. 2A:53A–8. The issue is whether CompleteCare is "organized exclusively for hospital purposes. *Id.*

Any discussion of "hospital purpose" naturally turns to the New Jersey Supreme Court's recent ruling in *Kuchera v. Jersey Shore Family Health Center*, 221 N.J. 239 (2015). There, the Court rejected the argument that a health center offering some charitable services qualifies as a "charitable organization" within the meaning of Section 7. *Id*. Instead, the Kuchera Court explained that a hospital is no longer "simply a facility where medical professionals treat their patients," but a place where members of the community not only seek emergency services but

also preventative services . . ." *Id.* at 251. In rejecting a restrictive definition of "hospital purpose," the Court explained, a "core function of a hospital" necessarily includes charity care. *Id.* at 254.

Various courts within this District have embraced this more expansive definition of "hospital purpose" under Section 8. *See e.g.*, *Gremminger v. United States*, No. 14-3626, 2017 WL 1170853 (D.N.J. Mar. 29, 2017) (analyzing Monmouth Family Health Center); *Mendez v. United States*, No. 14-7778, WL 1882472 (D.N.J. May 9, 2017) (analyzing CAMcare Health Corporation). *S.M. v. United States*, No. 13-5702, 2016 WL 7374530 (D.N.J. Dec. 20, 2016) (analyzing CompleteCare). As such, a hospital that offers charitable services may still be organized "exclusively for hospital purposes" under Section 8.

Consistent with this line of cases, we find that CompleteCare is similar to a typical and modern New Jersey hospital and entitles the Government to Section 8 immunity. Perhaps no case is more instructive in determining CompleteCare's hospital status than *S.M. v. United States*. There, Judge Joseph Rodriguez found that that CompleteCare, indeed the same defendant at issue, had an exclusively hospital purpose. He carefully analyzed the *Kuchera* opinion and acknowledged CompleteCare's broad and sometimes charitable health services. *Id.*

This Court agrees with Judge Rodriguez and similarly finds CompleteCare was organized exclusively for hospital purposes. Further, we acknowledge CompleteCare's similarly wide range of health services. These services include counseling, enrollment assistance in Medicaid and New Jersey Charity Care, health screening and education, various school-age programs, and other programs for mental health and substance abuse. *Id.* at ¶ 30. In accordance with *Kuchera* and its progeny, CompleteCare's services are generally consistent with the many medical and non-medical pursuits under the ambit of a "modern hospital" in New Jersey. *Kuchera*, 221 N.J.

at 250. The Government is therefore entitled to Section 8 immunity.

Accordingly, the Court holds that the NJCIA damages cap applies. The United States' motion for partial summary judgment will be granted.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendant's motion to dismiss and will grant the motion for partial summary judgment [Doc. No. 55]. The Court also dismisses as moot the pending Motion to Limit Damages [Doc. No. 56] by another Defendant. An Order will follow.


Dated: 5/13/2019                                                                            s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                         United States District Judge